# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF LOUISIANA

**MELANIE JERUSALEM**  CIVIL ACTION NO.

**VERSUS**

 22-516-SDD-EWD

**DEPARTMENT OF STATE LOUISIANA, ET AL.**

 Please take notice that the attached Magistrate Judge's Report and Recommendation has been filed with the Clerk of the U.S. District Court.

 In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

 ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

 Signed in Baton Rouge, Louisiana, on June 26, 2023.

             **ERIN WILDER-DOOMES**
             **UNITED STATES MAGISTRATE JUDGE**

M. Jerusalem Certified Mail Receipt 7020 1810 0000 5305 5032

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF LOUISIANA

**MELANIE JERUSALEM**　　　　　　　　　　　**CIVIL ACTION NO.**

**VERSUS**

　　　　　　　　　　　　　　　　　　　　　　**22-516-SDD-EWD**

**DEPARTMENT OF STATE**
**LOUISIANA, ET AL.**

### MAGISTRATE JUDGE'S REPORT, RECOMMENDATION, AND ORDER

Before the Court is the Motion to Dismiss for Failure to State a Claim ("Motion"), filed by the Department of State Louisiana and R. Kyle Ardoin, in his official capacity as Secretary of State of Louisiana (collectively, "Defendants").[1] Melanie Jerusalem ("Plaintiff"), who is representing herself, has filed an opposition memorandum.[2] Another federal district court in Louisiana recently rejected identical claims against the same defendants because the plaintiff lacked standing.[3] It is recommended that this Court adopt the well-reasoned opinion in *Soudelier*. Because Plaintiff lacks standing to bring the claims she asserts in this case, this Court lacks subject matter jurisdiction; therefore, the Court should, on its own motion, dismiss without prejudice Plaintiff's Amended Complaint. If the recommendation is adopted, it is further recommended that Defendants' Motion to Dismiss,[4] based on other grounds, be terminated as moot.

**I.　BACKGROUND**

On August 12, 2022, Plaintiff filed her Amended Complaint, alleging the failure of Defendants to preserve the integrity of Louisiana elections by permitting voters to use

---

[1] R. Doc. 26.
[2] R. Docs. 29-30 are Plaintiff's "Memorandum of Law in Response to Defendant's Motion to Dismiss" and "Plaintiff's Response to Defendant's Motion to Dismiss," which consist of two pages containing a total of five sentences of argument. These responses are considered together as Plaintiff's opposition memorandum to the Motion (the "Opposition").
[3] *Soudelier v. Department of State Louisiana, et al.*, No. 22-2436, 2022 WL 17283008 (E.D. La. Nov. 29, 2022), *appeal filed*, No. 22-30809 (5th Cir. 2022).
[4] R. Doc. 26.

"unaccredited electronic voting systems" that are vulnerable and susceptible to tampering.[5] Plaintiff, a Louisiana resident and voter,[6] asserts two claims.

Count I seeks a declaratory judgment that the unaccredited electronic voting systems used by the State are in violation of various Louisiana election laws and the Help America Vote Act ("HAVA").[7] In support of Count I, Plaintiff appears to advance two main arguments: that Louisiana used voting systems in statewide elections, including the 2020 election, that (1) lacked the requisite certification and (2) were vulnerable to hacking. Regarding certification, Plaintiff alleges that voting systems must have certificates of accreditation from the United States Election Assistance Commission (the "EAC"). Plaintiff argues that the voting machines used in Louisiana elections lacked the requisite certification because the EAC accreditation for Pro V&V, the EAC certification company Defendants selected to certify Louisiana voting machines, had expired. According to Plaintiff, the EAC is "required to vote on reaccreditation with the presence of a quorum," and there was no quorum for a year before 2020. Plaintiff thus argues that the EAC was not eligible to vote on reaccreditation of Pro V&V before the 2020 election.[8]

Regarding the voting machines' vulnerability to hacking, Plaintiff contends that in the Fall of 2019 Louisiana leased voting machines from Dominion Voting Systems. She points to two sources to support her allegation that those machines were vulnerable to hacking. The first is a purported cybersecurity expert, Dr. Alex Halderman, whom Plaintiff says testified before the Louisiana Voting Systems Commission and Ardoin that Dominion voting systems were vulnerable to hacking. Plaintiff contends that Dr. Halderman issued a report, which outlines these vulnerabilities, but the report has been filed under seal in a separate lawsuit, which has

---

[5] R. Doc. 4, pp. 7, 9, 13, 15.
[6] R. Doc. 4, p. 6.
[7] *See* 52 U.S.C. § 21081, *et seq.*, (not Title 42 of the U.S. Code, erroneously cited by Plaintiff at *e.g.*, R. Doc. 4, p. 14), which provides for voting systems standards, among other provisions.
[8] R. Doc. 4, pp. 9-11.

"handicapped" Ardoin's ability to assess the extent of the vulnerabilities in Dominion voting machines.[9]

Second, Plaintiff points to an affidavit by Terpesehore Maras ("Maras"), whom she describes as a "trained cryptolinguist."[10] Plaintiff contends that Maras testified via affidavit in a separate lawsuit that all votes cast on Dominion machines are sent to an entity called "SCYTL," which can alter the votes. SCYTL, rather than the machines themselves, allegedly tallied the votes.[11] Plaintiff concludes that Maras' testimony "presents unambiguous evidence of," among other things, foreign interference, "[c]omplicit behavior by the previous administrations from 1999 to present to hinder the voice of the American people," and "knowing[] and willing[] collu[sion] with foreign powers to manipulate the outcome of the 2020 election."[12] Maras' affidavit does not appear to implicate Defendants in this case. Rather, Maras' affidavit appears to focus on former President Barack Obama, President Obama's EAC appointees, and other "US persons holding an office and private individuals."[13] Plaintiff points to the testimony of Maras and Dr. Halderman to show that Defendants in this case were aware, or should have been aware, of vulnerabilities in the Dominion voting machines, and they nevertheless permitted the machines to be used in statewide elections in violation of the Louisiana Election Code and HAVA.[14]

Count II is premised on Defendants' alleged failure to retain election-related records. Plaintiff contends that Defendants have not provided sufficient proof that the machines used in the 2020 election were certified. Plaintiff further contends that, because Defendants need only retain records for 22 months pursuant to 52 U.S.C. § 20701[15] and La. Rev. Stat. 18:158, Defendants are

---

[9] R. Doc. 4, p. 13.
[10] R. Doc. 4, p. 14, citing R. Doc. 1-15.
[11] R. Doc. 4, pp. 14-15.
[12] R. Doc. 4, p. 16.
[13] R. Doc. 4, pp. 15-16 and R. Doc. 1-15.
[14] R. Doc. 4, pp. 13-16.
[15] "Every officer of election shall retain and preserve, for a period of twenty-two months from the date of any general, special, or primary election of which candidates for the office of President, Vice President [etc.] are voted for, all

3

"running out the clock" until they can destroy evidence that the voting machines were not certified, which Plaintiff contends "invalidates all of the 2020 Louisiana general election results."[16]

Although the two counts in her Amended Complaint refer only to violations of Louisiana statutes, HAVA, and federal election records law, Plaintiff also alleges that Defendants violated her constitutional right to vote by permitting Louisiana voters to use uncertified voting machines.[17]

In her prayer for relief, Plaintiff asks the Court to, among other things, issue an emergency injunction prohibiting the current voting machines from being used in future elections and requiring the use of paper ballots; enjoining Defendants from tampering with or deleting evidence from the 2020 election; compelling Defendants to initiate an investigation into allegedly criminal election violations; and directing Governor John Bel Edward to "render elections void no later than 10 days after the date of judgment becomes final as 'fraud vitiates everything.'"[18] Plaintiff also filed a Motion for a Temporary Restraining Order ("TRO"), which was denied without prejudice to re-urging because it failed to comply with Local Civil Rule 65.[19] Plaintiff has not re-urged her motion for a TRO.

On September 6, 2022, Defendants filed the Motion, seeking to dismiss Plaintiff's Complaint with prejudice for failure to state a claim.[20] Defendants argue that Plaintiff has failed to state a claim because the statutes on which she relies do not confer a private right of action, and

---

records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election, except that, when required by law, such records and papers may be delivered to another officer of election and except that, if a State or the Commonwealth of Puerto Rico designates a custodian to retain and preserve these records and papers at a specified place, then such records and papers may be deposited with such custodian, and the duty to retain and preserve any record or paper so deposited shall devolve upon such custodian. Any officer of election or custodian who willfully fails to comply with this section shall be fined not more than $1,000 or imprisoned not more than one year, or both."
[16] R. Doc. 4, pp. 17-18.
[17] R. Doc. 4, p. 19 ("To allow us to vote in another election conducted on uncertified machines is a violation of our 1st and 14th amendment rights and in violation of R.S. 18:2, R.S. 18:18, R.S. 18:572, R.S. 1351, Chapter 8, R.S. 18:1361, RS 18:1366, RS 18:1374….").
[18] R. Doc. 4, pp. 19-20.
[19] R. Docs. 6 & 21.
[20] R. Doc. 26.

her constitutional claim, if any, is vague and conclusory.[21] Defendants alternatively argue that, if the Court only dismisses Plaintiff's federal claims, it should decline to exercise supplemental jurisdiction over the state-law claims.[22]

Plaintiff's Opposition alleges, without any legal support, the following: the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1330 and/or "over a federal civil complaint;" "Defendant has stated awareness of the election machine vulnerabilities;" HAVA and La. R.S. 18:1400.1, a provision of Louisiana's election laws, grant relief; and "Defendant has the authority to fulfill the prayers for relief stated in the complaint under LRS 36:741."[23]

## II. LAW AND ANALYSIS

### A. Plaintiff Lacks Standing to Raise Her Purported Claims

In *Soudelier v. Department of State Louisiana, et al.*,[24] the U.S. District Court for the Eastern District of Louisiana recently dismissed another case that alleges identical claims and evidence against the same defendants.[25] For the sound reasons discussed in *Soudelier*, reproduced in large part *below*, Plaintiff in this case lacks standing to bring her claims, which deprives this Court of subject matter jurisdiction.

---

[21] R. Doc. 26-1, pp. 3-4.
[22] R. Doc. 26-1, pp. 4-5.
[23] R. Docs. 29-30. 28 U.S.C. § 1330 gives federal courts original jurisdiction, without regard to the amount in controversy, of any nonjury civil action against a foreign state under certain circumstances and is not applicable here. 28 U.S.C. § 1252, on which Plaintiff relies in her Amended Complaint as another basis for jurisdiction (R. Doc. 4, p. 6), has been repealed. None of the Louisiana Revised Statutes cited by Plaintiff give this Court federal subject matter jurisdiction, including La. R.S. 36:741, which creates the Louisiana Department of State.
[24] No. 22-2436, 2022 WL 17283008 (E.D. La. Nov. 29, 2022), *appeal filed*, No. 22-30809 (5th Cir. 2022).
[25] The Amended Complaint in this case and the Complaint in *Soudelier* are identical save the names of the Plaintiffs. At about the same time that this case and *Soudelier* were filed, another virtually identical Complaint was filed against the same Defendants in the U.S. District Court for the Western District of Louisiana, *Jungemann v. Department of State Louisiana*, No. 22-2315 (W.D. La., July 28, 2022 and Aug. 12, 2022), R. Docs. 1, 3. The plaintiffs in *Soudelier* and *Jungemann* also sought temporary restraining orders. The Eastern District denied plaintiff Soudelier's motion for a TRO on the grounds that he failed to establish a likelihood of success on the merits because "the statutes under which he seeks relief do not confer private rights of action…[and] to the extent plaintiff alludes to constitutional claims, he fails to plausibly allege a non-conclusory, non-speculative constitutional claim or injury." *Soudelier v. Dep't of State Louisiana,* No. CV 22-2436, 2022 WL 3686422 (E.D. La. Aug. 25, 2022) at *1-2.

Although Defendants do not raise the issue of Plaintiff's Article III standing, when necessary, a federal court must address the issue of standing on its own motion.[26] That is because Article III of the Constitution requires plaintiffs in federal court to allege an actual "case or controversy."[27] The case-or-controversy requirement means that plaintiffs "must allege some threatened or actual injury resulting from the [defendants'] putatively illegal action before a federal court may assume jurisdiction."[28] The party asking the court to assert federal jurisdiction bears the burden of establishing that: (1) the plaintiff suffered an "injury-in-fact," which is an "actual or imminent" invasion of a legally protected interest that is "concrete and particularized"; (2) the injury is "fairly traceable" to the challenged conduct of the defendant; and (3) it is likely that plaintiff's injury will be redressed by a favorable judicial decision.[29]

Plaintiff contends that Defendants have allowed uncertified, vulnerable voting machines to be used in Louisiana statewide elections, even though Defendants are aware of these problems. As such, Plaintiff argues that her vote may have been impermissibly diluted in violation of her Fourteenth Amendment rights, because the voting machines may have been hacked. Plaintiff lacks standing to pursue this claim because she has failed to allege a "concrete and particularized" injury.[30] Plaintiff's purported injury—the possible dilution of her vote in violation of her Fourteenth Amendment rights—is not particular to her. Rather, the injury she alleges applies equally to every other Louisiana voter. The Fifth Circuit has made clear that such a "generalized claim" does not "warrant standing."[31]

---

[26] *Soudelier*, 2022 WL 17283008, at *3, citing *Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 301 F.3d 329, 331-32 (5th Cir. 2002) (citations omitted).
[27] *Soudelier*, 2022 WL 17283008, at *3, citing *O'Shea v. Littleton,* 414 U.S. 488, 493 (1974) and citing U.S. Const. art. III, § 2 ("The judicial power shall extend to all cases [and] to controversies....").
[28] *Soudelier*, 2022 WL 17283008, at *3, citing *O'Shea*, 414 U.S. at 493 (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 617 (1973)).
[29] *Soudelier*, 2022 WL 17283008, at *3, citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).
[30] *Soudelier*, 2022 WL 17283008, at *3, citing *Lujan*, 504 U.S. at 560.
[31] *Soudelier*, 2022 WL 17283008, at *3, citing *Hotze v. Hudspeth*, 16 F.4th 1121, 1125 (5th Cir. 2021) (plaintiffs who asserted that drive-thru voting "hurt the integrity of the election process" lacked standing because they did not "have any other basis for standing that differs from any other Harris County voter").

As explained in *Soudelier*, in the aftermath of the 2020 election federal district courts across the country have consistently dismissed complaints premised on the theory of unconstitutional vote dilution for this reason. For example, the Montana federal district court held: "[G]eneralized grievances about . . . election system software allegedly allowing for 'ballot tampering' prove insufficient to grant standing."[32] Similarly, the Arizona federal district court held: "Plaintiffs have not alleged a concrete harm that would allow the Court to find Article III Standing for their vote dilution claim," which is "a very specific claim that involves votes being weighed differently and cannot be used generally to allege voter fraud."[33]

Like the many other plaintiffs who claimed their votes were unconstitutionally diluted because of alleged issues with the integrity of the 2020 election, Plaintiff's alleged injury is neither concrete nor particularized; rather, it amounts to a "generalized grievance about the conduct of [the] government."[34] It is well-settled that such generalized complaints about the operation of the government do not present the kind of controversy that is justiciable in federal court. The relief plaintiff seeks would "no more directly and tangibly benefit[] [her] than it [would] the public at large."[35] Plaintiff's alleged injury is also speculative, as she seeks preservation and production of

---

[32] *Soudelier*, 2022 WL 17283008, at *3, citing *Grey v. Jacobsen*, No. 22-82, 2022 WL 9991648, at *4 (D. Mont. Oct. 17, 2022) (dismissing complaint).
[33] *Soudelier*, 2022 WL 17283008, at *3, citing *Bowyer v. Ducey*, 506 F. Supp. 3d 699, 711-12 (D. Ariz. 2020). *See also Soudelier*, 2022 WL 17283008, at *3, citing *Donald J. Trump for President, Inc. v. Boockvar*, 493 F. Supp. 3d 331, 377 (W.D. Pa. 2020) (complaint that defendants failed to take election safeguards, which increased the risk of voter fraud and the unconstitutional dilution of plaintiffs' votes, did not meet the injury-in-fact requirement for standing) and citing *Feehan v. Wisconsin Elections Comm'n*, 506 F. Supp. 3d 596, 608 (E.D. Wisc. 2020) (plaintiff who alleged that the Wisconsin election process was "riddled with fraud, illegality, and statistical impossibility" failed to allege that "he has suffered a particularized, concrete injury sufficient to confer standing"). *See also Miller v. Hughes,* 471 F. Supp. 3d 768, 776 (W.D. Tex. 2020) (dismissing vote dilution case challenging a Texas election statute that mandated the order of the candidates on the ballot because the alleged injury was common to all voters and therefore legally insufficient to establish Article III standing).
[34] *Soudelier*, 2022 WL 17283008, at *4, citing *Lance v. Coffman*, 549 U.S. 437, 442 (2007).
[35] *Soudelier*, 2022 WL 17283008, at *4, citing *Lujan*, 504 U.S. at 573-74; *see also Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 485 (1982) ("The proposition that all constitutional provisions are enforceable by any citizen simply because citizens are the ultimate beneficiaries of those provisions has no boundaries.").

elections records and documentation so that she can determine whether or not the voting machines were certified, and ultimately, whether her vote was, in fact, diluted.[36]

It is difficult to discern from Plaintiff's Complaint and Opposition whether she claims to have suffered any other injuries aside from the possibility that her right to vote was undermined. To the extent Plaintiff suggests that Defendants' alleged violations of the various statutes she cites in her Complaint are, themselves, injuries, this claim likewise fails. "It is true that the actual or threatened injury required by Art[icle] III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing."[37] "Congress may create a statutory right or entitlement the alleged deprivation of which can confer standing to sue even where the plaintiff would have suffered no judicially cognizable injury in the absence of statute."[38] The "standing question in such cases is whether the . . . statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief."[39] The injury-in-fact analysis "for purposes of Article III is directly linked to the question of whether the plaintiff has suffered a cognizable statutory injury under the statute in question."[40]

---

[36] R. Doc. 4, p. 18 ("La R.S. 18:154 and R.S. 49:956 allows Plaintiff the right to discovery. Plaintiff argues that Defendants have not provided sufficient proof of certification of the machines prior to the November 3, 2020 general election," and p. 20 ("Plaintiff asks that this Court enter an order requiring Defendants to provide to Plaintiff all correspondence relating to *the certification of the electronic voting machines* that are maintained by Defendants…."). *See also Soudelier*, 2022 WL 17283008, at *4, citing *Lujan*, 504 U.S. at 560 (injury-in-fact may not be "conjectural" or "hypothetical").
[37] *Soudelier*, 2022 WL 17283008, at *4, citing *Wendt v. 24 Hour Fitness USA, Inc.*, 821 F.3d 547, 552 (5th Cir. 2016) (citations omitted).
[38] *Soudelier*, 2022 WL 17283008, at *4, citing *Wendt,* 821 F.3d at 552 and *see Soudelier* at n. 29 ("In *Wendt*, the Fifth Circuit assumed without deciding that a state legislature, like Congress, could have "the power to elevate otherwise trivial inconveniences to legally cognizable injuries-in-fact." 821 F.3d at 552 n. 17.").
[39] *Soudelier*, 2022 WL 17283008, at *4, citing *Wendt,* 821 F.3d at 552.
[40] *Soudelier*, 2022 WL 17283008, at *4, citing *Wendt,* 821 F.3d at 552.

Here, Congress did not "create a statutory right or entitlement the alleged deprivation of which can confer standing to sue,"[41] because the statutes Plaintiff cites do not confer a private right of action.[42]

Because Plaintiff lacks standing, this Court lacks jurisdiction to hear her claims, and it is recommended that they be dismissed without prejudice on the Court's own motion.[43] If this recommendation is adopted, it if further recommended that Defendants' Motion to Dismiss,[44] which raises other grounds for dismissal, be terminated as moot.

### B. Plaintiff Should Not Be Given Additional Opportunity to Amend

Plaintiff has not sought any further leave to amend at this time. Should Plaintiff do so, it is recommended that the request be denied, as Plaintiff has already had an opportunity to plead her "best case." Plaintiff has filed two lengthy complaints and she sought a TRO. Additionally, Plaintiff opposed Defendants' Motion to Dismiss, providing yet another opportunity to further explain her claims. In short, because Plaintiff cannot establish standing consistent with the claims alleged such that further amendment would be futile, further leave to amend should be denied.[45]

---

[41] *Soudelier*, 2022 WL 17283008, at *4, citing *Wendt,* 821 F.3d at 552.
[42] *Soudelier*, 2022 WL 17283008, at *4, citing *Texas Voters Alliance v. Dallas Cty.*, 495 F. Supp. 3d 441, 459 (E.D. Tex. 2020) ("HAVA does not create a private right of action.") and citing *Fox v. Lee*, No. 18-529, 2019 WL 13141701, at *1 (N.D. Fla. Apr. 2, 2019) ("In a word, 52 U.S.C. § 20701 does not confer a private right of action on Plaintiffs."). "The Louisiana Election Code likewise does not confer a private right of action to citizens." *Soudelier*, 2022 WL 17283008, at *4, citing *Treen v. Republican Party of La.*, 1999-2073 (La.App. 1 Cir. 9/22/00), 768 So. 2d 273, 279 ("[T]he Louisiana Election Code does not provide for a citizens suit, or a 'qui tam action' for the enforcement of regulatory statutes against violators if the district attorney or attorney general fails to enforce the code.").
[43] *See Christopher v. Lawson,* 358 F. Supp. 3d 600, 605 (S.D. Tex. 2019) ("[A] claim is properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the claim"), citing *In re FEMA Trailer Formaldehyde Prods. Liab. Litig. (Miss. Plaintiffs)*, 668 F.3d 281, 286 (5th Cir. 2012) (quotation omitted).
[44] R. Doc. 26.
[45] *See King/Morocco v. Land Rover Sw. Houston*, No. 18-4196, 2018 WL 5995295, at *3 (S.D. Tex. Nov. 15, 2018), *appeal dismissed*, No. 19-20417, 2019 WL 6878533 (5th Cir. July 10, 2019) ("The court denies Simms leave to amend the complaint given that Simms's employment-discrimination claims are time-barred and duplicative, and his international-law claims are meritless and duplicative. Granting leave to amend would be futile. *See Brewster v. Dretke*, 587 F.3d 764, 768 (5th Cir. 2009))" (citation omitted), and *Gutierrez v. Drug Enf't Admin.*, No. 18-964, 2018 WL 4471789, at *2 (N.D. Tex. Aug. 24, 2018), report and recommendation adopted, No. 18-964, 2018 WL 4467924 (N.D. Tex. Sept. 17, 2018) citing *Brewster*, 587 F.3d at 767-768 (while generally "a pro se litigant should be offered an opportunity to amend his complaint before it is dismissed, ... [g]ranting leave to amend is not required ... if the plaintiff has already pleaded his 'best case.' ").

## III. RECOMMENDATION

Plaintiff lacks standing in this Court to assert her vote dilution and record retention claims as she has not alleged an Article III "case or controversy." As such, the Court lacks subject matter jurisdiction, and the case should be dismissed without prejudice.

Accordingly,

**IT IS RECOMMENDED** that this case be **DISMISSED WITHOUT PREJUDICE** on the Court's own motion for lack of subject matter jurisdiction, and that Plaintiff be denied any further leave to amend her complaint.

If this recommendation for *sua sponte* dismissal is adopted, **IT IS FURTHER RECOMMENDED** that the Motion to Dismiss for Failure to State a Claim, filed by Defendants Department of State Louisiana and R. Kyle Ardoin, in his official capacity as Secretary of State of Louisiana,[46] be **TERMINATED AS MOOT**.

**IT IS ORDERED** that the Clerk of Court serve this Report and Recommendation on Melanie Jerusalem via certified mail, return receipt requested and via regular mail at her address on PACER.

Signed in Baton Rouge, Louisiana, June 26, 2023.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[46] R. Doc. 26.